## No. 8647.

### MARTIN DUNSEE & CO. vs. A. NORDEN & CO.

In an action for damages, alleged to have been suffered from the publication of a libel, where the published matter appears not to be a libel, but a privileged communication, no damages can be awarded.

*Merrick, Foster & Merrick*, for Plaintiffs and Appellants.

Under the *general issue* in an action of libel the defendant canot give in evidence, by way of justification, facts tending to show that the words were privileged communications. The special defense should be pleaded. 10 A., 231. 28 A., 239.

A party who has published a libel, *after being informed of its falsity*, cannot defend himself under the plea that the libel was a privileged communication. The law does not favor the circulation of lies and slanders, nor grant an immunity to any one for so doing. Odgers on Slander, marginal, page 199. C. C., 2315, 2316.

"All persons concerned in the publication are guilty to the same extent." Cade vs. Redditt, 15 A., 493.

*E. W. Huntington* and *H. L. Dufour*, for Defendants and Appellees.

The opinion of the Court was delivered by

MANNING, J. The plaintiffs are commission merchants of Mobile, and bring this suit to recover fifty thousand dollars as damages suf-

fered by a libel, alleged to have been published by the defendants, which ruined the plaintiffs' credit and destroyed their business. The defendants pleaded the general issue alone.

The libel is a private letter written from Mobile to A. Norden & Co. of this city of date September 29, 1880, and one of the latter firm to Morton, Bliss & Co. of New York, dated October 15, 1880, as follows:

"M. D. & Co., are people of NO STANDING OR CREDIT WHATSOEVER. *Neither have they any means.* Up to last July and August, they were *dealers in chickens, eggs,* etc. Since that time they have been buying cotton quite freely, to the general astonishment of the community, and to the great satisfaction of our factors, who obtained about an ¼ advance more from them than anybody else; only one bank takes their exchange; none of the others want to have anything to do with them. Under these circumstances, of course we cancelled the purchase, giving as our reason the above report, and telling them that we could never touch their bills again unless they wrote *us a letter stating their means, and which we would forward to* your good selves, subject to your approval. THEY WERE FURIOUS ENOUGH, but up to now we never received that promised letter!"

The language used in the letter to A. Norden & Co. from Mobile is substantially the same as that used by Norden to his New York correspondents, from which latter this extract is taken.

Wernecke of the Norden firm told Yuille, an exchange broker of this city, of the contents of this letter, and Yuille told Cucullu another broker. Thos. P. Miller & Co. of Mobile learned of it, and it said so did Morton, Rose & Co. of London, the branch house of Morton, Bliss & Co.

There was much learned discusion at the bar, as there is in the briefs, of the legal principles which it is said enter into this case. It is denied that justification can be heard unless it is specially pleaded, and that all evidence tending to support that plea must be excluded where the defense is the general issue alone—and that the lower court, in sustaining the defense, that the libellous words were a privileged communication, went beyond the pleadings.

We do not find it necessary to enter into these discussions, much less to follow the plaintiff's counsel in his earnest presentation of the enormity of the defendants' offense in stigmatizing the plaintiffs as quondam "chicken-peddlers." No business man, and no sensible man in any sphere of life, would refuse to entrust his business to a man of affairs of credit and character, because his occupation had once been humble. It is the boast of our country that of all the world, it contains the

largest proportion of men, who from insignificant beginnings have risen to wealth, consideration, and honor by force of character, and by rectitude in dealing. Good credit and high character, won by right dealing and unblemished honorable conduct, cannot be lost by sneers at one's origin, or reminders of one's former lowly occupation. The lofty rebuke of Lord Thurlow to the Duke of Grafton, who taunted him in the House of Lords with his humble origin, does but give voice to a sentiment as universal as it is commendable;—"I can say that as a peer of parliament, as Speaker of this House, as Keeper of the Great Seal, as Guardian of His Majesty's conscience, as Lord High Chancellor of England, nay even in that character alone in which the noble Duke would think it an affront to be considered—as a man—I am at this moment as respectable—I beg leave to add I am at this moment as respected—as the proudest peer I now look down upon."

The plaintiffs' own witnesses repel the idea that the business in which they were said to have been formerly engaged would have any effect on their credit. Cucullu, replying to the direct question of that tenor, says, "no, if a man has a good character, his bill would be just as good, even if he had formerly engaged in that business," and that so far as he could judge the utterance of the contents of the letter had not damaged the plaintiffs' credit. Yuille's impression of it was that the statements in the letter were rather derogatory but not serious, and being questioned what would have been the effect of these statements upon the commercial standing of the plaintiffs, answered, "the truth would have been looked into," and whatever was wrong would have been corrected. The testimony of the plaintiffs themselves fails to impress us with the conviction that they suffered in any other way than delay in getting their authority to draw confirmed, which however annoying, could have a temporary effect only, for so soon as it was seen that their bills were uniformily paid, confidence would be restored. It would require testimony of the strongest kind to convince us that a firm having the business the plaintiffs allege, had lost it because a single letter from some obscure person had cast the aspersions upon them charged as a libel in this case, and we certainly do not find in this record evidence either of the kind or weight requisite to warrant a judgment in the plaintiffs' favor.

Judgment affirmed.

Rehearing refused.